UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 17-cv-2071

JOHN DOE,

                              Plaintiff,

      -against-

COLORADO SCHOOL OF MINES, COLORADO SCHOOL OF MINES BOARD OF TRUSTEES, PAUL C. JOHNSON, in his official capacity for COLORADO SCHOOL OF MINES, DANIEL FOX, in his official capacity for COLORADO SCHOOL OF MINES, DEREK MORGAN, in his official capacity for COLORADO SCHOOL OF MINES, KARIN RANTA-CURRAN, in her official capacity for COLORADO SCHOOL OF MINES, CAMILLE A. TORRES, in her official capacity for COLORADO SCHOOL OF MINES, KATIE SCHMALZEL, in her official capacity for COLORADO SCHOOL OFMINES, BRENT WALLER in his official capacity for COLORADO SCHOOL OF MINES, REBECCA FLINTOFT in her official capacity for COLORADO SCHOOL OF MINES

                              Defendants.
_____

PLAINTIFF'S MOTION FOR LEAVE TO RESTRICT ACCESS
PURSUANT TO D.C. Colo. L. R 7.2
_____

Plaintiff John Doe, ("Plaintiff") by his attorneys, Nesenoff & Miltenberg, LLP and Michael Mirabella P.C., and pursuant to D.C. Colo. L. Civ. R. 7.2, hereby seek authorization to file a Complaint in the above-captioned matter as a pseudonymous Plaintiff, restricting access of the true identity of Plaintiff to the Court and parties. Plaintiff requests a Level 1 restriction. In

light of the serious nature of the allegations contained in the Complaint, a copy of which is attached, as **Exhibit "A"**.

Plaintiff John Doe is justifiably concerned about the possibility of acts of reprisal that could further prevent Plaintiff from proceeding with his college and future endeavors, and inflict further severe academic, financial and/or mental harm. Plaintiff's identity, as described in the Complaint, should not be made available to the general public due to the highly personal, sexual explicit and confidential nature of the allegations in said Complaint. Plaintiff further informs the Court that he anticipates moving for a Protective Order at a later date requesting that Defendants be prohibited from ever disclosing the true identify of Plaintiff.

## STATEMENT OF FACTS

On the night of Saturday, October 8, 2016 and the morning of Sunday, October 9, 2016, Plaintiff, Jane Roe and her good friend, Megan Poe. were at an off-campus party.  Plaintiff had known Megan Poe since meeting her during freshman orientation.

During the party, all three were drinking, although Over the course the evening and into the next morning, Plaintiff was drinking excessively both before and during at the off-campus party. Plaintiff and Megan Poe began were making out at the party and continued during the evening and early morning hours.

Plaintiff previously had arranged with a designated driver for a ride back to campus from the off-campus party. When the designated driver advised the Plaintiff, it was time to leave, Plaintiff then obtained a ride back to campus with the designated driver for Megan Poe and Jane Roe.

During the ride back to campus, Plaintiff and Megan Poe again were again making out. So as not to violate CSM's underage student housing intoxication policy, Plaintiff elected to sleep

2

at his fraternity house. Plaintiff also offered Megan Poe and Jane Roe the option of sleeping in a spare room in the fraternity house so they too would not violate CSM's housing policy.

Megan Poe and Jane Roe accepted Plaintiff's offer. Once inside the house, Plaintiff showed them the room they can sleep in and left Megan Poe and Jane Roe alone in the room After some 20 minutes in the fraternity house's basement spent drinking some beer with a fraternity pledge brother, Plaintiff returned to the room to check on Megan Poe and Jane Roe.

Upon returning to the room, Jane Roe and Megan Poe were not there. Plaintiff located Megan Poe and Jane Roe in a second-floor bathroom. Plaintiff than walked Megan Poe and Jane Roe back to their room. Upon returning to the room, Plaintiff and Megan Poe, lying on the floor, again started kissing and making out.

Plaintiff and Megan Poe discussed if Megan Poe "wanted to do anything more", and Megan Poe indicated that she could not have sex, because she was "on her period". Megan Poe then offered to perform oral sex on Plaintiff and proceeded to do so. As Plaintiff and Megan Poe engaged in oral sex, while Plaintiff was lying on the floor, Jane Roe remained in the room with them.

As Megan Poe was performing oral sex on the Plaintiff, Jane Roe approached the two and began removing her clothing. Plaintiff did not invite or request any sexual contact from Jane Roe. As Plaintiff's penis was still erect, Jane Roe, on her own initiative, then straddled Plaintiff and placed her vagina over Plaintiff's penis. After a short period of time, Jane Roe stopped and asked Plaintiff if he had a condom. As Megan Poe, who was still in the room and on her phone, looked in her bag for a condom, as the Plaintiff found one in his wallet.

As Jane Roe put the condom on Plaintiff's penis, Plaintiff asked Jane Roe, "are you sure you want to do this" and Jane Roe replied "Yea". Jane Roe and Plaintiff then engaged in sexual intercourse with Megan Poe still in the room. Plaintiff started to feel nauseated and then blacked

3

out during intercourse with Jane Roe. Plaintiff has no memory of any events until the next morning.

Plaintiff woke up fully clothed on a mattress outside the room he had the sexual encounters with both Megan Poe and Jane Roe. When he awoke, Plaintiff did not see Megan Poe or Jane Roe in the room or anywhere in the fraternity house. Plaintiff then walked back to his dorm room by himself.

Later that day Plaintiff learned from a classmate that a posting from his phone, on the rugby team's chat group, contained a video of Plaintiff having oral sex with Megan Poe and another video with Jane Roe partially nude. However, no witness in the school investigation ever claimed to have seen these videos. Immediately upon learning of the existence of the videos, Plaintiff sought to have them removed. Plaintiff was successful in having the videos deleted, in fact, he obtained the cooperation of the ruby groupme administrator who deleted the entire groupme chat account.

During the afternoon of Sunday October 9, 2016, Plaintiff received a call from Jane Roe about the video, and he assured her that he was attempting to have the video removed, which he successful did. Plaintiff continued to speak with Megan Poe and Jane Roe, both of whom assured Plaintiff that their sexual interactions were consensual, and their only concern was having the videos removed.

On Monday, October 10, 2016, a member of Plaintiff's fraternity reported this incident to Rebecca Flintoft, then Deputy Title IX Coordinator of CSM. On the same day, Ms. Flintoft contacted Jane Roe and indicated that CSM was going to open a Title IX investigation. Jane Roe initially did not want to cooperate in the investigation but changed her mind and provided the name of Megan Poe

On Tuesday, October 11, 2016, Plaintiff received a letter from Daniel Fox, the Vice President of Student Life and Dean of Students, indicating that because of a report regarding alleged incidents that took place over the weekend of October 8-9 between you and another CSM student, [Jane Roe], he was not to have any contact with her, and that his classes were being switched as a result.

The facts surrounding Defendants' "Investigation", which forms the basis for this lawsuit are set in great detail in Plaintiff's Complaint **("Exhibit A").** Following Defendants' "Investigation", on November 10, 2016, Defendants, Torres and Schmalzel issued an investigative report that indicated that Plaintiff violated CSM's policy prohibiting gender-based discrimination, sexual harassment and sexual violence, by (a) having engaged in sexual activity with Jane Roe while she was mentally incapacitated as a result of drinking alcohol, and (b) by having taken video of a sexual activity.

On December 1, 2016, Plaintiff met with Defendant Morgan, Dean of Students and was given a letter informing him that he was being expelled. Plaintiff filed a timely appeal which Defendants denied and upheld the severe and unjust penalty of expulsion

Throughout the investigative process, Defendants failed to abide by CSM's own guidelines and regulations and acted in direct violation of federal and/or state law. A non-exhaustive list of Defendants' wrongful actions include the following: (i) Defendants failed to conduct a timely investigation of the allegations; (ii) Defendants failed to conduct a thorough and impartial investigation; (iii) Defendants failed to provide Plaintiff proper notice of the charges; (iv) Defendants evidenced a gender bias against Plaintiff as the male accused of sexual misconduct throughout the investigative process; (v) Defendants made assessments of credibility and evidentiary weight with respect to each party and witness without any ascertainable rationale or logic; and (vi) Defendants failed to afford Plaintiff the requisite presumption of innocence

required by a preponderance of the evidence standard, all of which demonstrated substantial procedural errors in violation of Title IX, the Fourteenth Amendment and other federal and/or state laws.

In light of these facts, Plaintiff should be permitted to protect his identity by filing the Complaint under a pseudonym. Plaintiff is prepared to provide a statement of his true identity under seal, upon the Court's request.

**ARGUMENT**

It is within the district court's discretion to determine whether a plaintiff should be permitted to proceed under a pseudonym. *M.M. v. Zavaras*, 139 F.3d 798, 802 (10th Cir. 1998). In weighing circumstances to allow a party to proceed under a pseudonym, "the Court weighs plaintiff's interests in privacy against the public's interest in access to open court proceeding" *Patton v. Entercom Kansas City, LLC*, 2013 WL 3524157 (July 11, 2013, D-Ka) see also. *Zavaras, supra*. "The Court exercises "informed discretion" when deciding whether to allow a plaintiff to proceed under the cloak of anonymity" *Patton, supra*, quoting *Zavaras* 139 F.3d. at 803.

Many federal courts have permitted parties to proceed anonymously when special circumstances arise. Generally, courts allow the use of pseudonyms "[w]here it is necessary…to protect a person from harassment, injury, ridicule or personal embarrassment…." *U.S. v. Doe*, 665 F.2d 920, 922 (9th Cir. 1977) (citing *U.S. v. Doe*, 556 F.2d 391, 393 (6th Cir. 1977)). Courts "must balance the need for anonymity against the general presumption that parties' identities are public information and the risk of unfairness to the opposing party." Does I Thru XXIII v. Advanced Textile Corp., 214 F. 3d 1058, 1068 (9th Cir. 2000).

Plaintiff should be permitted to proceed under a pseudonym given the highly sensitive, sexual graphic and personal nature of this litigation. Plaintiff does not merely contend that the

revelation of his name would result in embarrassment or public humiliation. Rather, Plaintiff notes the highly sensitive nature and privacy issues that could be involved with being falsely linked to an instance of alleged sexual misconduct. In fact, numerous courts around the country have permitted plaintiffs alleging parallel claims against colleges and universities to proceed anonymously. *See e.g. John Doe v. Columbia University and Trustees of Columbia University*, 2014 WL 6471520 (S.D.N.Y. 2014); *Doe v. Univ. of the South*, 687 F. Supp. 2d 744 (E.D. Tenn. 2009); *Doe v. Univ. of Massachusetts-Amherst*, 2015 WL 4306521 (D. Mass. 2015); *Doe v. Univ. of S. Florida Bd. of Trustees*, 2015 WL 3453753 (M.D. Fla. 2015); *Doe v. Salisbury Univ.*, 2015 WL 3478134 (D. Md. 2015); *Doe v. Univ. of Montana*, 2012 WL 2416481 (D. Mont. 2012)("With respect to the individual students involved in the Student Conduct Code proceeding, as well as the witnesses and University Court members involved in that proceeding, the Court finds that the interests of those individuals in avoiding undue embarrassment, harassment, and disclosure of sensitive private information outweigh the public's need to know their names," *citing to Does I–XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1068–69 (9th Cir.2000)). Similarly, Plaintiff here should be permitted to proceed anonymously due to the highly sensitive and personal nature associated with being falsely accused of sexual misconduct.

In addition, Plaintiff should be permitted to proceed anonymously in this matter as the revelation of his identify would result in significant harm to Plaintiff, the exact type of which he seeks to remedy by the commencement of this lawsuit. Specifically, if Plaintiff were required to reveal his identity, any ultimate success in this matter would be negated by the disclosure of his name. Namely, even if he were to achieve a removal of the expulsion from all academic records, Plaintiff would nonetheless be significantly hindered in his ability to pursue future career and educational endeavors, including graduate studies, as any entity or employer would undoubtedly have access to the records related to this matter and discover that Plaintiff was falsely accused of

sexual misconduct, regardless of whether the decision is ultimately overturned as a result of litigation. Based on the foregoing, Plaintiff should be permitted to proceed anonymously as requiring him to reveal his identity would result in significant harm to Plaintiff, including the exact damages he seeks to remedy in this matter; namely, physical, psychological, emotional and reputational damages, economic injuries and the loss of educational and career opportunities.

Further, Plaintiff should be permitted to proceed anonymously as Defendants will not be prejudiced in any way by proceeding against an anonymous party. "Other than the need to make redactions and take measures not to disclose plaintiff's identity, defendants will not be hampered or inconvenienced merely by Plaintiff's anonymity in court papers." *Doe No. 2 v. Kolko*, 242 F.R.D. 193, 198 (E.D.N.Y. 2006). Significantly, Defendants are already aware of Plaintiff's true identity. Thus, there is no doubt that Defendants will have an unobstructed opportunity to conduct discovery, present their defenses and litigate this matter, regardless of whether Plaintiff identifies himself or proceeds anonymously. Accordingly, Plaintiff should be permitted to proceed anonymously in this action as revealing his name will cause significant prejudice to Plaintiff, while proceeding anonymously will not hinder Defendants in any way.

Plaintiff should also be permitted to proceed in this action anonymously as the public does not have a strong interest in knowing his identity. Considering the purely legal nature of the claims presented (i.e. Defendants violated Plaintiff's right to fair process in violation of Title IX and other federal and/or state law), there is a weak public interest in learning Plaintiff's identity as an individual. The public's interest in this matter would not be furthered by disclosing Plaintiff's identity, as his challenges to Colorado School of Mines's biased and unfair investigatory process concerns a larger association than the interest of an individual plaintiff; it affects the male student population at Colorado School of Mines as a whole. *See, e.g. Doe No. 2 v. Kolko*, 242 F.R.D. 193, 195 (E.D.N.Y. 2006).

While in the past, courts have disfavored allowing plaintiffs to proceed anonymously except in extreme circumstances, the nature of the internet today is such that any plaintiff is readily accessible via a simple online search; thus, courts should be willing to afford additional protective measures to avoid further damage to a plaintiff involved in a matter concerning such egregious and unfounded violations as the present one. Here, if Plaintiff were required to reveal his name, even if Plaintiff were to ultimately succeed on his claims against Defendants, the public's access to his identity would result in further damage to his future educational and career endeavors, the very harms which he seeks to remedy in this action.

Thus, it is respectfully submitted, there is simply nothing about the status of the Plaintiff that would heighten any public interest beyond the normal public interest in any judicial proceedings sufficient to outweigh Plaintiff's right to privacy. Moreover, the public's knowledge will only be minimally restricted as it will still know what is alleged to have occurred that resulted in charges of sexual misconduct being filed, and how the Defendants investigated and adjudicated those charges. Allowing Plaintiff to proceed anonymously will not significantly obstruct the public's interest in this matter. Accordingly, there is not a strong public interest in knowing Plaintiff's identity as an individual, as the issues presented to this Court concern a much greater population of potential plaintiffs. The interests of Defendants and/or the public will not be harmed if Plaintiff's name is not revealed.

## **CONCLUSION**

For these reasons and such other reasons as may appear just to the Court, Plaintiff, John Doe, requests that his Motion to Restrict Access Pursuant to D.C. Colo. L. Civ. R 7.2 be granted ordering a Level 1 Restriction on all filings pertaining to this case.

Dated this 29 day of August 2017.

NESENOFF & MILTENBERG, LLP

*/s/ Andrew T. Miltenberg*
*[e-filing-August 29, 2017]*

_____

Andrew T. Miltenberg, Esq.
Stuart Bernstein, Esq.
363 Seventh Avenue, Fifth Floor
New York, New York 10001
(212) 736-4500
amiltenberg@nmllplaw.com
tnovack@nmllplaw.com

-and-

KISHINEVSKY & RAYKIN

*/s/ Igor Raykin*
*[e-filing-August 29, 2017]*

_____

Igor Raykin, Esq.
2851 S. Parker Rd., Suite 150
Aurora, CO 80014
Phone: (720) 863-4256
igor@coloradolawteam.com

*Attorneys for Plaintiff John Doe*